IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
June 9, 2020 Session

## STATE OF TENNESSEE v. QUANTORIUS RANKINS

**Appeal from the Circuit Court for Rutherford County**
**No. F-79060    David M. Bragg, Judge**

_____

## No. M2019-00687-CCA-R3-CD

_____

Defendant, Quantorius Rankins, entered a best interest plea pursuant to *Hicks v. State*, 945 S.W.2d 706 (Tenn. 1997) to statutory rape. The agreement provided that the trial court would conduct a sentencing hearing to determine if Defendant would be granted judicial diversion and to determine if Defendant would be required to register as a sex offender. Following the sentencing hearing, the trial court denied judicial diversion, ordered Defendant to register as a sex offender, and imposed an out-of-range sentence of six years' probation pursuant to the plea agreement. Defendant appeals the trial court's decision. Finding no error, we affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

THOMAS T. WOODALL, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR. and TIMOTHY L. EASTER, JJ., joined.

Brennan M. Wingerter, Knoxville, Tennessee (on appeal) and Thomas Parkerson, Murfreesboro, Tennessee (at trial) for the appellant, Quantorius Rankins.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Jennings Hutson Jones, District Attorney General; and Jeff George, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

*Factual background*

Defendant was indicted by the Rutherford County Grand Jury for two counts of sexual battery by an authority figure and one count each of solicitation of sexual exploitation of a minor, especially aggravated sexual exploitation of a minor, aggravated

sexual exploitation of a minor, and solicitation of a minor. The judgment shows that Defendant entered a best interest guilty plea to an amended charge of statutory rape in one count and the remaining counts were dismissed. The trial court held a hearing to determine whether Defendant would receive judicial diversion and whether he would be required to register as a sex offender.

At Defendant's plea hearing, the State provided the following as a factual basis for Defendant's plea:

> At the time of the offense, the victim was attending the Boys [and] Girls Club here in Murfreesboro, and [Defendant] was a counselor there. On July 21st of 2017, [Defendant] messaged the victim on Snapchat and asked him if he could come over to his house. The victim gave the Defendant his address, and the Defendant came over in his car. He parked his car behind the apartment complex.
>
> They met. The Defendant hugged the victim, and they talked for a while. And the victim went back in his house briefly, but the Defendant did not leave. There were some more texts and stuff exchanged.
>
> Eventually, the victim went back outside. And during that encounter, the Defendant hugged the victim a second time and then kissed him on his neck. He groped the victim on his buttocks and embraced the victim from behind so that the victim was facing away from him, at which time he put his hand down the victim's pants and underwear and grabbed and stroked the victim's penis for around what felt to the victim like about a minute.
>
> The victim asked the Defendant to stop. At this time, the victim said he could feel the Defendant's erect penis pressing up against him from behind.
>
> The Defendant begged him to, quote, stick it in, [to] which the victim said no. And at that point, the encounter was terminated.
>
> For the following several days, the victim and the Defendant messaged each other mostly on Snapchat and some over text messages. On the following Wednesday night a week later, July 26th, 2017, the Defendant messaged the victim via text message around midnight and asked him if he wanted [Defendant] to come over to his house and chill.

He did come over. During the time between that he came over and that he was coming over [sic], [Defendant] asked the victim to send naked photos of himself and a naked video of himself. And in response, the victim did send the Defendant naked photos of himself and a video of himself masturbating on Snapchat.

The victim came outside and talked to [Defendant] for a while. And nothing else happened during that exchange.

The next day, the victim's mother found out about some of this and filed a police report. The following day, on July 28th, 2017, after learning about the allegations against him, [Defendant] was exchanging with people about it on social media. And he posted images of the victim, including the video of the victim masturbating on Instagram.

This video was seen by the victim's sister, [ ]. And she screen-shotted it and documented it. The text message conversations from these nights w[ere] captured via a forensic examination from the victim's phone. The images that were posted on Instagram were captured by Detective Michael Yates through an Instagram search warrant. And that would be the State's proof if this case goes to trial.

*Sentencing hearing*

At the sentencing hearing, Detective Michael Yates, of the Murfreesboro Police Department, testified that he was working in the Special Victims Unit in July of 2017 when he received a report from the victim's mother. He testified that at the time of the offense, the victim was 14 years old and Defendant was 19 years old. The victim met Defendant at the Boys and Girls Club, where Defendant was a counselor. Defendant contacted the victim through Snapchat and arranged to meet the victim at the victim's residence. On July 21, 2017, Defendant went to the victim's residence, and Defendant "hugged the victim." The victim believed that Defendant "was coming onto him, trying to be intimate with him." The victim told Defendant that he was not homosexual and that "he couldn't do this." The victim went back inside his home, and Defendant remained outside. The victim went back outside and spoke to Defendant again. Defendant "hugged him and kissed the victim on the neck." Defendant also "grabbed the victim's butt." Defendant then turned the victim around and embraced him from behind. Defendant reached into the victim's pants and stroked his penis. The victim stated that he could feel Defendant's erect penis against him. Defendant then "begged if he could stick it in," and the victim responded, "No." Afterwards, Defendant "grabbed the victim's cell phone" and deleted any communications between the victim and Defendant.

Defendant and the victim continued to communicate through text messages, Snapchat, and phone calls. Defendant asked the victim to send him "photographs of his penis and butt." Defendant went to the victim's residence again in the early morning hours of July 27, 2017. They had a brief conversation outside, and the victim's mother "came outside and caught them together."

Detective Yates examined the victim's cell phone and discovered text messages that Defendant and the victim exchanged on July 27, 2017, in which they planned to meet behind the victim's residence. Detective Yates also learned that Defendant had posted a video of the victim masturbating on Instagram and had "tagged" the victim's sister. Defendant also posted photographs the victim had sent him. The victim's sister identified the video and photographs as having been taken in their home.

The victim's mother testified that "somehow word got out" about the encounter between Defendant and the victim and that the victim "started getting bullied" and other students "started calling him gay." The victim told his mother that he "just didn't want to be here anymore." She took the victim to his pediatrician, who recommended that the victim begin counseling. The victim's mother testified that the victim had been going to counseling for the three years since the incident, and there were "still moments when he talk[ed] about suicide." She testified that the victim also had panic attacks. The victim's mother testified that "[n]obody should have to go through this." She requested that the trial court order Defendant to be registered on the sex offender registry.

The victim provided a written victim impact statement. He stated that he "felt tortured, hurt, taken advantage of, [and] still ha[d] disbelief." He stated that because of Defendant's actions, he "suffer[ed] with [his] sexuality and bullying." The victim stated that he had made "multiple suicide attempts."

Pat Daley testified on behalf of Defendant. She testified that she had known Defendant since he was ten years old. She and her husband employed neighborhood kids to do work in their yard, and Defendant was one of those kids. She testified that Defendant was a junior in college and that he had worked since she had known him. She testified that "there's never, ever been a hint of anything like the accusations" against Defendant by the victim in this case. She testified that she also knew Defendant's siblings and mother, and the family had "really good values." Ms. Daley testified that Defendant had been "so helpful to so many different people over the years," and she believed "it would be a shame" for the incident to have a lasting impact on his future.

Quanisha Rankins, Defendant's sister, testified that their mother had worked at McDonald's for "[a] long time" and that the family had once lived in a shelter following

a house fire. She testified that Defendant "made [her] proud," being the first in her family to attend college. She testified that Defendant was involved "in everything." She hoped that Defendant could put the incident "behind him and keep moving forward as he's been doing."

Defendant testified that he was 21 years old and attended the University of Memphis. He testified that he had "all A's." Defendant hoped to earn his business degree and open his own dance studio. Defendant began working at a young age to help support his family. He testified that "times were hard." Defendant acknowledged that he got into fights in high school and attended "alternative school." Defendant testified that he was molested by a teacher in middle school. He testified that he was "going to go try to get counseling for that situation," and he acknowledged that he "need[ed] to go try to get some help." Defendant testified that he accepted the plea agreement in this case in order to "move on," and he took "responsibility for putting us in this situation." Defendant testified that being on the sex offender registry would impact his ability to finish college.

On cross-examination, Defendant testified he stated during his psychosexual evaluation that the victim tried to seduce him. Defendant insisted that the victim sent him unsolicited nude photographs. Defendant admitted to having taken a screenshot of one of the photographs of the victim. He testified that he had planned to "go to [his] boss and tell her what happened." Defendant acknowledged that he never addressed the issue with his supervisor. Defendant testified that he went to the victim's house because the victim had asked him to be there when the victim talked to his mother about his sexuality. Defendant testified that he "was trying to help" the victim. Defendant acknowledged that he met with the victim outside his house after midnight. He testified, "now that I look back on it, I realize that it was a mistake."

At the conclusion of the sentencing hearing, the trial court specifically found that Defendant was not credible. The court found that "[Defendant]'s statement as to what happened is not supportable by the facts" and noted that Defendant "continue[d] to deny the basic facts of the allegation that brought about these charges, in spite of evidence presented to the [c]ourt that would appear to confirm the State's presentation" of the facts. Additionally, the trial court found that Defendant's "failure to accept responsibility for what he's done and to acknowledge the wrongful acts he's done" weighed against granting judicial diversion. The trial court found that the circumstances of the offense were "egregious." The court noted that Defendant's actions of posting on social media resulted in "revictimization" of the victim.

The trial court found that Defendant's lack of a criminal record and his social history weighed in Defendant's favor, noting that Defendant was attending college "and

apparently doing very well[.]" Additionally, the trial court found that Defendant appeared to be in "excellent physical health," but the court noted that Defendant's mental health was "a little more uncertain, based on his own testimony and what he perceives to be the need for counseling to help move forward, and to overcome events and traumas that have occurred in the past."

Considering the psychosexual report admitted as an exhibit at the sentencing hearing, the trial court noted "concern that [Defendant] ha[d] failed to seek out or take advantage of opportunities to receive counseling" for his past trauma. The trial court noted that "a cycle has to stop somewhere" and found that Defendant's failure to undergo treatment weighed against granting judicial diversion. The trial court found that "based on the nature and circumstances involved in this case and based on the publication of the events, to grant diversion in this case would not support the deterrent value[.]" Considering the interests of the public, the trial court found that "Defendant's stated goals are contrary to the appropriate behavior set out in the risk evaluation or that would be supported by the community."

Based on these findings, the trial court denied Defendant's request for judicial diversion and ordered Defendant to be placed on the sex offender registry and undergo treatment. Pursuant to the plea agreement, the trial court sentenced Defendant to six years' probation.

*Analysis*

*Judicial diversion*

Defendant asserts that the trial court's decision to deny his request for judicial diversion "was based on an erroneous application and assessment of the common law diversion factors." The State asserts that the trial court properly considered and weighed the applicable factors and set forth its findings on the record. We agree with the State.

We review decisions to grant or deny of judicial diversion under the standard of review announced in *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) ("[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence."); *State v. King*, 432 S.W.3d 316, 324 (Tenn. 2014) ("the abuse of discretion standard accompanied by a presumption of reasonableness applies to all sentencing decisions, including the grant or denial of judicial diversion, when the trial court properly supports its decision on the record in accordance with the purposes and principles of sentencing").

The trial court found, and the parties agree, that Defendant is qualified for judicial diversion under the requirements of Tennessee Code Annotated section 40-35-313(a)(1)(B) (2019). However, "a 'qualified' defendant is not necessarily entitled to diversion. Whether to grant judicial diversion is left to the discretionary authority of the trial courts." *State v. King*, 432 S.W.3d 316, 326 (Tenn. 2014). Following a determination that the defendant is eligible for judicial diversion, the trial court must consider:

> (a) the accused's amenability to correction, (b) the circumstances of the offense, (c) the accused's criminal record, (d) the accused's social history, (e) the accused's physical and mental health, and (f) the deterrence value to the accused as well as others. The trial court should also consider whether judicial diversion will serve the ends of justice - the interests of the public as well as the accused.

*State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (citing *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996)); *see also King*, 432 S.W.3d at 326 (reaffirming that the *Electroplating* requirements "are essential considerations for judicial diversion").

> [W]hen the trial court considers the *Parker* and *Electroplating* factors, specifically identifies the relevant factors, and places on the record its reasons for granting or denying judicial diversion, the appellate court must apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision. Although the trial court is not required to recite all of the *Parker* and *Electroplating* factors in order to obtain the presumption of reasonableness, the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it. Thereafter, the trial court may proceed to solely address the relevant factors.

> If, however, the trial court fails to consider and weigh the applicable common law factors, the presumption of reasonableness does not apply and the abuse of discretion standard, which merely looks for "any substantial evidence" to support the trial court's decision, is not appropriate. . . . In those instances, appellate courts may either conduct a de novo review or, if more appropriate under the circumstances, remand the issue for reconsideration.

*King*, 432 S.W.3d at 327-28 (internal citations omitted) (footnote omitted).

We have set forth in detail the trial court's findings of fact regarding whether to grant judicial diversion. Here, the trial court considered the *Parker* and *Electroplating* factors, and the trial court identified those factors that it found applicable to this case. It is not necessary that a trial court recite all of the *Parker* and *Electroplating* factors when justifying its decision on the record in order to obtain the presumption of reasonableness. *King*, 432 S.W.3d at 323.

The trial court relied heavily upon the circumstances of the offense and the Defendant's failure to accept responsibility in denying judicial diversion. Defendant argues that the trial court's consideration of Defendant's failure to accept responsibility for his actions in determining Defendant's amenability to correction was error because Defendant entered a best interest plea, which did not require him to admit guilt. In *State v. Albright*, 564 S.W.3d 809 (Tenn. 2018), the court held that a defendant who entered a nolo contendere plea to the offense of solicitation of a minor was not entitled to relief on the basis that the trial court did not specifically inform him that his refusal to admit to criminal conduct during his sex offender therapy could result in the revocation of his judicial diversion. *Id*. at 826. Defendant attempts to distinguish this case from *Albright* in that here, the trial court's consideration of Defendant's failure to accept responsibility following a best interest plea was in relation to the trial court's denial of judicial diversion at sentencing, rather than in relation to the revocation of judicial diversion on the basis of failure to accept responsibility during sex offender treatment.

As Defendant acknowledges, "there is a critical distinction between confessing guilt to a crime and accepting responsibility for wrongful conduct." *Stanton v. State*, 395 S.W.3d 676, 688 (Tenn. 2013). This court has concluded that a trial court can determine that a defendant is not amenable to correction because he refused to take responsibility for his actions without basing its decision on the defendant's failure to admit guilt. *State v. Ronald Ailey*, No. E2019-02359-CCA-R3-CD, 2019 WL 3917557, at *22 (Tenn. Crim. App. Aug. 19, 2019), *no perm. app. filed*. Indeed, "a defendant's unwillingness to admit wrongdoing and assume responsibility for his or her actions" when determining whether the defendant's amenability to correction" weighs in favor or against a grant of diversion is an appropriate and important consideration. *State v. Stephens*, 497 S.W.3d 408, 432 (Tenn. 2016) (quoting *Stanton*, 395 S.W.3d at 689).

Here, the trial court did not fault Defendant for failing to admit guilt for the specific charge against him. Instead, the court concluded that Defendant failed to assume responsibility for his actions based on his testimony at the sentencing hearing. Defendant denied that he engaged in sexual activity with the victim, and he denied that he requested nude photos from the victim. Defendant testified that the victim sent an unsolicited nude

photo of himself to Defendant. Defendant testified that he planned to show the photo to his boss. However, he never showed it to her and instead posted the photo on his Instagram account. Defendant maintained that the victim pursued a relationship with Defendant and that he only visited the victim's residence late at night because he wanted to help the victim, which he acknowledged was a "mistake." Defendant also acknowledged that he needed counseling to address issues from his childhood, yet at the time of sentencing, he had not received any counseling. As stated above, the trial court specifically found that Defendant's testimony was not credible.

We agree with the trial court's conclusion that Defendant failed to "acknowledge the wrongful acts he's done." We disagree with Defendant's assertion that the trial court based its findings on Defendant's refusal to admit guilt of the charged offense. The trial court properly considered Defendant's failure to accept responsibility for his actions when determining that his amenability to correction weighed against diversion.

Defendant also contends that the trial court failed to give adequate weight to factors that the trial court determined favored judicial diversion, including Defendant's physical health, his lack of a criminal record, and his social history. Because the trial court properly identified and weighed the *Electroplating* factors, we afford the trial court's decision a presumption of reasonableness. *King*, 432 S.W.3d at 327; *Parker*, 932 S.W.2d at 958. We determine that there was substantial evidence in the record to support the denial of diversion. It was within the trial court's discretion to conclude that the "egregious" nature of the offense and Defendant's lack of amenability to correction outweighed the factors in favor of diversion. Defendant is not entitled to relief in this regard.

*Sex offender registry*

Defendant also contends that the trial court erred by ordering him to register on the Tennessee Sex Offender Registry. Specifically, the Defendant asserts that the trial court did not give separate consideration to the relevant factors and did not articulate its findings supporting its decision on the record.

This court reviews a trial court's order for a defendant to register as a sex offender for an abuse of discretion with a presumption of reasonableness. *State v. Ryan Patrick Broaderick*, No. M2017-01136-CCA-R3-CD, 2018 WL 4203883, at *7 (Tenn. Crim. App. Sept. 4, 2018). When determining whether a defendant should register as a sex offender, the trial court "must consider 'the facts and circumstances surrounding the offense' and may consider any additional relevant factors" such as a psychosexual evaluation, a presentence report, and any other facts deemed relevant by the court. *Id.*, 2018 WL 4203883, at *8-9.

Tennessee Code Annotated section 39-13-506(d)(2)(B) provides as follows:

> In addition to the punishment provided for a person who commits statutory rape for the first time, the trial judge may order, after taking into account the facts and circumstances surrounding the offense, including the offense for which the person was originally charged and whether the conviction was the result of a plea bargain agreement, that the person be required to register as a sexual offender pursuant to title 40, chapter 39, part 2.

Defendant asserts that the trial court "considered and analyzed only the issue of whether [Defendant] qualified for diversion[,]" and the court "did not discuss at any length the reasons for requiring [Defendant] to register as a sex offender." Defendant asserts that there is "no indication that the trial court considered the [statutory] factors[.]" The State asserts that the record demonstrates that the trial court properly considered the factors required to determine a defendant's registration as a sex offender.

In making its ruling, the trial court began by stating, "[t]he only matters that were to be set before the [c]ourt today were the determination as to whether or not he would be required to register on the sex offender registry and comply with those requirements [and] whether or not he would be allowed to enter a plea subject to judicial diversion pursuant to 40-35-313." The trial court then clearly stated its findings relative to judicial diversion on the record. Following its denial of judicial diversion, the trial court ordered Defendant to register with the sex offender registry and undergo treatment. The trial court did not specifically state which factor or factors it considered in ordering Defendant's sex offender registration. The State asserts that the trial court properly considered the circumstances of the offense, which the trial court found were "egregious" in that Defendant posted nude photos of the victim on social media, thereby perpetuating his victimization.

We note that in considering the circumstances of the offense, which is the primary consideration as required by Tennessee Code Annotated section 39-13-506, the trial court stated, "that does not weigh in favor of granting [Defendant] diversion." Citing *State v. Paul Avery Reno*, No. M2016-01903-CCA-R3-CD, 2017 WL 3037538 (Tenn. Crim. App. July 18, 2017), *no perm. app. filed*, Defendant urges this court to reverse the decision of the trial court and remand for a new sentencing hearing to state on the record the trial court's reasons for ordering Defendant to register as a sex offender. In that case, a panel of this court declined to consider findings made relative to alternative sentencing as applicable to the trial court's sex offender registry determination, noting, "[i]t is [ ] not the province of this court to assume a trial court's reasoning." *Id*. at *15.

In that case, however, the panel also concluded that the trial court "relied heavily upon improper factors and determinations not supported by the record" in denying judicial diversion; the trial court failed to consider mitigating and enhancement factors in determining alternative sentencing; a psychosexual evaluation was not conducted as required by statute; the trial court "improperly considered some factors [and] neglected to consider others[;] and the trial court "placed substantial weight on improper factors."  *Id*. at *12-14.  Accordingly, the panel reversed the trial court's decision and remanded for a new sentencing hearing.  Regarding the trial court's sex offender registration determination, the panel in *Reno* stated, "[b]ecause we remand for a new sentencing hearing, we need not belabor the issue, but if after the new hearing the court determines that the Defendant should be ordered to register as a sex offender, it should place proper findings on the record to support its determination." *Id*. at *15.

We distinguish this case from *Reno* in that the trial court in this case properly considered and placed weight on the relevant factors and made findings on the record in support of its decision relative to its denial of judicial diversion.  Although the trial court did not repeat or emphasize its findings regarding the circumstances of the offense in the context of its sex offender registry determination, we conclude that the record is sufficient to support the trial court's decision.  The trial court did not abuse its discretion in requiring Defendant to register as a sex offender.  Defendant is not entitled to relief.

CONCLUSION

Based on foregoing analysis, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE